**Cindy HURT, Plaintiff and Appellee,**

v.

**Francis O. HURT, Jr., Defendant and Appellant.**

Nos. 890142–CA, 890224–CA.

Court of Appeals of Utah.

June 6, 1990.

Dale M. Dorius, Brigham City, for defendant and appellant.

Pete N. Vlahos and F. Kim Walpole, Ogden, for plaintiff and appellee.

Before DAVIDSON, ORME, JJ., and J. ROBERT BULLOCK,[1] Senior District Judge.

J. ROBERT BULLOCK, Senior District Judge:

Francis Hurt, Jr., appeals from the decree of divorce ending his marriage to Cindy Hurt. We affirm.

Before their six-year marriage, Cindy gave birth to a child named Kathy Jo Heyden. The trial court found Kathy Jo to be Francis's child and accordingly awarded child support based on Francis's historical earnings, including overtime pay. After Francis did not pay the child support, and while this appeal was pending, the trial court entered judgment for the amount accrued.

During their marriage, the Hurts acquired a home that was valued at a maximum of $65,000 and subject to a mortgage having a $59,000 balance. When the couple separated, Cindy and her children remained in the home but did not pay the mortgage. Cindy informed Francis that she could not make the house payments and intended to move out. In a motion, she expressed her willingness for Francis to return to the home and keep the payments current. Francis, however, insisted upon receiving all of the home equity, a condition which Cindy did not accept. While the parties remained deadlocked on that issue

---

**1.** J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

for some months, the mortgagee completed foreclosure. The trial court found that the foreclosure price, including expenses, approximated the value of the home, and that the parties' failure to save the home from foreclosure had effectively destroyed their equity. The court thus made no award to reflect equity in the home.

On appeal, Francis challenges (1) the admissibility of the blood test evidence supporting the finding that he is the father of Kathy Jo, (2) the amount of the child support award, (3) the judgment for delinquent child support, and (4) the trial court's refusal to award him funds representing the equity in the home. We consider these arguments in that sequence.

## BLOOD TEST EVIDENCE OF PATERNITY

■ Francis was blood-tested twice as the possible father of Kathy Jo, first in 1979 and again in 1988. The 1979 testing yielded an estimated 79% probability of paternity, whereas the 1988 testing yielded an estimated 99%. The estimates from both tests were admitted into evidence as the expert opinion of Dr. Charles DeWitt, a pathologist. Francis argues that evidence based on the blood test results should not have been admitted in view of *Kofford v. Flora,* 744 P.2d 1343 (Utah 1987).

*Kofford* forbids admission of evidence based on testing of human leukocyte antigens if that testing, interpreted as *Kofford* prescribes, yields a probability of paternity of less than 95%.[2] The methods used to interpret the testing in this case are not questioned on appeal. Rather, Francis assails the 99% probability derived from the 1988 testing by pointing to the 79% probability resulting from the 1979 testing.

The trial court, however, apparently believed that the 1988 figure was accurate,

and on that basis admitted the blood test evidence. Dr. DeWitt had a plausible explanation for the apparent disparity in test results: In 1988, a battery of six different tests was performed, whereas in 1979, only two tests were performed. The more extensive 1988 testing produced corroborative results enabling Dr. DeWitt to raise his initial 1979 estimate of probable paternity to 99%, well in excess of the *Kofford* threshold. In light of the later, more extensive data and analysis, the trial court clearly did not abuse its discretion[3] in refusing to discredit and exclude the 1988 evidence.

## CHILD SUPPORT

■ Francis further argues that the trial court should not have considered his history of rather large overtime wages in determining the amount of his child support obligation. Francis claims that the trial court could have foreseen that the amount of overtime work that he would perform in the future would decline. However, the trial court refused to so find, and instead, expressly preferred to consider modifying the amount of child support if Francis's overtime did, in fact, decline. The trial court did not clearly err[4] in taking this wait-and-see approach to the facts underlying its child support calculations.

■ Because the paternity of the child was uncertain before trial, the trial court did not make an award of child support until its post-trial memorandum decision. That decision indicates a thorough consideration of the issues and incorporates an award of relief. That being the case, it would only have prolonged and exacerbated Francis's failure to support his child if effectiveness of the decision were made to await the signing of paper talismanically entitled "decree" or "order." The memo-

---

2. *Kofford,* 744 P.2d at 1353.

3. Apart from specific rules such as the *Kofford* threshold, an appellate court accords a trial court substantial discretion in ruling on the admissibility of evidence. *Whitehead v. American Motors Sales Corp.,* 101 Utah Adv. Rep. 27, 28 (1989).

4. We overturn a finding of fact (or the refusal to find a fact) based on a trial to the bench only if the appellant marshals all of the relevant evidence and shows the finding to be clearly erroneous. *Sweeney Land Co. v. Kimball,* 786 P.2d 760 (Utah 1990); *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989). Francis has done neither in this case.

randum decision was enforceable as the final ruling of the court on the issues before it, *Cannon v. Keller*, 692 P.2d 740, 741 n. 1 (Utah 1984),[5] and therefore, the trial court did not err in awarding judgment for child support accruing after issuance of the memorandum decision.

■ Moreover, the trial court was clearly not without jurisdiction to enter that judgment. In Utah procedure, the trial court retains jurisdiction to take necessary action in the case while an appeal is pending. *Lane v. Messer*, 689 P.2d 1333 (Utah 1984). In fact, action in the trial court pending appeal may moot the appeal. *See, e.g., Cingolani v. Utah Power & Light Co.*, 790 P.2d 1219 (Ct.App.1990) *cert. filed.*

### THE HOME EQUITY

■ Francis seeks an award representing the equity in the parties' former home. However, from the vantage point of trial, after the home had been lost in foreclosure, there was no equity left. While the Hurts might yet have salvaged some of their equity, they stood by disputing about who should receive it, even as it was being consumed in the costs of foreclosure and finally vanished altogether when the foreclosure was completed. Either of the Hurts could have broken their stalemate or taken timely action to timely resolve it in court; in fact, Cindy had filed a motion to do just that, but the issue languished in the file, without being submitted to the court, while Francis pressed his demand for all of

the equity. Francis proposes to us no valid basis[6] to fault Cindy for her refusal to accede to his demand that she forfeit all right to the equity in the home. We therefore see no reason that could now justify a judgment against her based on the dissipation of the equity through foreclosure against both of the parties.

### ATTORNEY FEES AND COSTS

Cindy has asked for an award of attorney fees and costs on appeal on the grounds that Francis's appeal is frivolous according to Utah R.App.Proc. 33(a). We agree in relation to his arguments other than the blood test issue,[7] and therefore grant Cindy's request for an award of the attorney fees and costs she has incurred in defending against this appeal on issues other than the admissibility of blood test evidence to prove Francis's paternity.

We therefore affirm and remand for determination and award of Cindy's costs and attorney fees, reasonable in amount and attributable to issues other than the blood test.

DAVIDSON and ORME, JJ., concur.

---

5. Optimally, of course, a memorandum decision will be finalized in formal findings, conclusions, and a judgment or decree.

6. Francis's counsel asserted at oral argument that Cindy had been ordered to pay the mortgage on the home; however, we have found no order to that effect in the record. Cindy was initially given possession of the home *"subject to*

her making the outstanding mortgage payments" (emphasis added), but those words do not impose on her an affirmative obligation to keep the mortgage current.

7. *See* Utah R.App.P. 33(b); *Porco v. Porco*, 752 P.2d 365 (Utah Ct.App.1988); *cf. Maughan v. Maughan*, 770 P.2d 156 (Utah Ct.App.1989).