[No. S025790. Dec. 17, 1992.]

In re the Marriage of RICHARD O. and BARBARA J. SIMPSON.
RICHARD O. SIMPSON, Appellant, v.
BARBARA J. SIMPSON, Respondent.

**COUNSEL**

Michael J. Rand for Appellant.

Tredway, Brandmeyer & Lumsdaine and Cheri A. Kadotani for Respondent.

**OPINION**

**GEORGE, J.**—In determining the appropriate amount of an award of spousal or child support, a trial court is authorized by statute to consider, among other factors, the "earning capacity," as well as the actual income, of the spouse who is being ordered to pay support (hereafter, supporting spouse). (Civ. Code, §§ 4801, subd. (a), 4721.)[1] The issue we must determine in this case is whether, when a supporting spouse has worked an abnormally high number of hours during the marriage in order to increase the family's income, the trial court in determining the supporting spouse's "earning capacity" should look to the income generated by the unusually rigorous work regimen or, instead, to the income which the supporting spouse would be capable of earning on the basis of a "normal" (i.e.,

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

objectively reasonable) work schedule. As explained, we conclude that an award of support following dissolution of a marriage generally should not penalize for his or her efforts a supporting spouse who voluntarily has undertaken an extraordinarily rigorous work regimen during the marriage, by locking that spouse into an excessively onerous work schedule.

I

Petitioner Richard O. Simpson (Richard) and respondent Barbara J. Simpson (Barbara) were married in June 1981 and separated in December 1988. They have one child, who was seven years of age at the time of trial in October 1989. Richard, a member of a theatrical workers' union, had worked approximately 17 years as a stage hand in theaters and television studios. He earned up to $18 per hour for theater work and $13.26 per hour for television studio work. He worked on a daily basis, telephoning his union hall each day for jobs. Because of his union seniority, he had considerable control over his choice of jobs.

Prior to the trial court's issuance of temporary spousal and child support awards in July 1989, Richard had engaged primarily in theater work. He frequently was able to work two or three jobs each day, working nights and weekends, and sometimes sixteen hours a day. On occasion, he was paid for more hours than the number he actually worked. In this regard, he testified on cross-examination as follows: "[Counsel:] With regard to whether or not you actually have to work the number of hours when you are called in on a job, isn't it true, sometimes would you only have to work for one hour and get paid for half a day?" [¶] [Richard:] Some jobs happen that way, yes. [¶] [Counsel:] And therefore rather than working four hours for a four hour shift you would only work one hour and get to go home three hours early? [¶] [Richard:] That's what even enables me to work three hours, three jobs a day. . . . [¶] [Counsel:] How many hours on the average do you thin[k] you would have to work if you were called in for 24? How many actual hours would you have to work? [¶] [Richard:] Probably 24. What we were discussing is not the normal case[,] it would be sometimes[;] it happens that way[,] not always[,] very [rarely] actually. [Counsel:] How often in the month do you think that would happen? [Richard:] Two or three times; hard to say."

Richard reported income of $61,000 in 1986, $62,000 in 1987, and $70,695 in 1988. The total amount of earnings during the seven-month period from January 1, 1989, to July 31, 1989, was $38,122, or approximately $5,446 per month.

Following a hearing on temporary support in July 1989, the trial court ordered Richard to pay to Barbara monthly spousal support in the amount of $630 and monthly child support in the amount of $580. Shortly thereafter, Richard shifted from theater work to lesser-compensated television work, earning approximately $2,200 per month. At trial, he testified he made this change because theater work, which required working long hours and nights and weekends, was overly stressful for him. He maintained that in the past, he had worked more than one job a day in order to earn sufficient income to enable his wife to attend school and thereby obtain a teaching credential, but he could not continue working sixteen hours a day. With television work, his schedule comprised a normal eight-hour day, thereby enabling him to spend time with his daughter, which he was unable to do when working in the theater.

As of the date of trial in October 1989, Richard had failed to pay any spousal or child support pursuant to the trial court's July 5, 1989, order of temporary support, except for one payment of $100. At trial, he provided no explanation for his default in payment.

At the time of trial, Barbara was enrolled in a training program to obtain an elementary-school teaching credential. She anticipated earning her credential in December 1989 and being hired as a substitute teacher in January 1990.

In its judgment of dissolution rendered in December 1989, the trial court decreed that the parties would share joint legal custody of the minor child, with Barbara to bear primary responsibility for the child's care and custody, and with Richard to have physical care and control during specified periods.

The trial court further concluded that it should assess spousal and child support based upon Richard's *earning capacity* rather than his *actual earnings* at the time of trial, finding that Richard had "voluntarily reduced his ability to earn during the proceedings which was unjustified and a purposeful reduction in his income to support the minor child and [Barbara]." The trial court fixed Richard's earning capacity at $60,000 gross annual income because "Mr. Simpson earned $60,000 gross per year for a number of years." The court accordingly fixed petitioner's gross monthly income at $5,000 and net monthly income at $3,615.

The court further determined that as of December 1989, Barbara had no income, and that as of January 15, 1990, Barbara would be able to begin working as a substitute teacher with an anticipated net monthly income of $1,214. On the basis of these findings as to the parties' respective incomes

and earning capacities, the court ordered Richard to pay to Barbara child support in the amount of $650 per month, reduced to $550 per month commencing February 1990, and spousal support in the amount of $1,000 per month, reduced to $500 per month commencing February 1990, for a period of three years.

On appeal by Richard, the Court of Appeal affirmed in a two-to-one decision. The majority opinion concluded that the trial court was entitled to disbelieve Richard's testimony that theater work was overly stressful and required that he work excessive hours, noting the record showed that at times Richard was able to receive four hours' pay for one hour's work. The concurring and dissenting justice opined that a person cannot "be *required* to work substantial overtime hours in a designated position in order to provide a higher standard of living for a former spouse and their child than can be sustained if that person works only a regular 40-hour week in a related, but slightly less well compensated job in the very same occupation." We granted Richard's petition for review.

## II

Section 4801 governs a trial court's determination of spousal support. Subdivision (a) of that statute provides that in "any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable, based on the standard of living established during the marriage." The statute sets forth those circumstances of the respective parties which the trial court is bound to consider in making an award of spousal support,[2] with the standard of living established by the parties during the marriage to serve as a point of reference

---

[2]". . . In making the award, the court shall consider all of the following circumstances of the respective parties: [¶] (1) The extent to which the earning capacity of each spouse is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (A) The marketable skills of the supported spouse; the job market for those skills; the time and expenses required for the supported spouse to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (B) The extent to which the supported spouse's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties. [¶] (2) The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse. [¶] (3) The ability to pay of the supporting spouse, *taking into account the supporting spouse's earning capacity*, earned and unearned income, assets, and standard of living. [¶] (4) The needs of each party based on the standard of living established during the marriage. [¶] (5) The obligations and assets, including the separate property, of each. [¶] (6) The duration of the marriage. [¶] (7) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶]

in weighing these enumerated factors. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 484-485 [274 Cal.Rptr. 911].) Among these factors is the "ability to pay of the supporting spouse, taking into account the supporting spouse's *earning capacity*, earned and unearned income, assets, and standard of living." (§ 4801, subd. (a)(3), italics added.)

In December 1989, when the child support award issued in the present case, former section 4720 et seq. (The Agnos Child Support Standards Act of 1984 (the Act)) governed the trial court's determination of child support. The Act codified the well-established principle that "[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (Former § 4720, subd. (e); see Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1992) 6:39.5, p. 6-75.) The Act established a mandatory minimum child support award and authorized the trial court to award a higher amount of child support "when appropriate." (Former § 4724.) Former section 4724, subdivision (a), provided that in setting child support higher than the mandatory minimum, "the court shall be guided by the criteria set forth in applicable statutes, relevant case law, state and local child support guidelines not in conflict with the mandatory minimum award established by this chapter, and the legislative intent that children share in their parents' standard of living as set forth in this chapter."[3]

Judicial Council guidelines supplementing former section 4724[4] (adopted by the Los Angeles County Superior Court and operative in 1989) set forth a formula (applicable in the present case) for the calculation of child support higher than the mandatory minimum. The components of the guideline formula included the net monthly income of the respective parents, based upon certain deductions from gross income. The guidelines provided that, in

---

(8) The age and health of the parties. [¶] (9) The immediate and specific tax consequences to each party. [¶] (10) Any other factors which it deems just and equitable. . . ." (§ 4801, subd. (a), italics added.)

[3]Senate Bill No. 370, 1991-92 Regular Session, approved by the Governor May 8, 1992, effective July 1, 1992 (Stats. 1992, ch. 46), repealed and superseded the Act, providing a new statewide uniform guideline for the calculation of child support and principles to which trial courts shall adhere in implementing the guideline formula. Section 4721 now sets forth a guideline formula, for the computation of support, similar to the formula specified in the former Judicial Council guidelines (see fn. 4, *post*). The components of that statutory formula include the net disposable incomes of the parties, which in turn are based upon their respective gross incomes. Section 4721, subdivision (f)(2), provides that in computing gross income, "The court may, in its discretion, consider the earning capacity of a parent in lieu of that parent's income, consistent with the best interests of the children."

[4]Pursuant to the directive of subdivision (b) of former section 4724, the Judicial Council prepared guidelines for discretionary child support above the mandatory minimum. These guidelines, set forth in the appendix to the California Rules of Court, former division VI, were adopted by the Los Angeles County Superior Court.

calculating gross income: "Earning capacity may be considered in place of actual income. . . ." (appen., Cal. Rules of Court, former div. VI, Discretionary Child Support, § 6(c)(2).)

As demonstrated, the former and current statutory guidelines governing the determination of spousal and child support authorize the trial court in its discretion to consider the earning capacity as well as the actual income of the supporting spouse in determining support, but they do not specify or limit the circumstances under which the trial court may look to earning capacity in addition to, or in place of, actual income in fixing support.

California courts have approved support awards based upon the earning capacity, instead of the actual income, of the supporting spouse in cases where " 'it appears from the record that there is a deliberate attempt on the part of the [spouse] to avoid his [or her] financial family responsibilities . . . .' " (*In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 973 [236 Cal.Rptr. 706], citing *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408]; see, e.g., *Pencovic* v. *Pencovic* (1955) 45 Cal.2d 97, 101-102 [287 P.2d 501] [husband founded religious society and refused to seek or accept employment]; *Webber* v. *Webber* (1948) 33 Cal.2d 153, 160 [199 P.2d 934] [purposeful refusal to seek new employment after layoff]; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243] [husband voluntarily terminated employment and refused to accept a new position, claiming inability to find any employment consistent with his qualifications]; *Meagher* v. *Meagher* (1961) 190 Cal.App.2d 62 [11 Cal.Rptr. 650] [husband quit a well-paying job in a family-owned corporation immediately after separation and accepted a much lower-paying position in a different business].)

Conversely, in fixing support, courts have looked solely to the actual income, rather than the earning capacity, of the supporting spouse in cases where the record demonstrated that a reduction in the supporting spouse's income was attributable to circumstances beyond the spouse's control (*Philbin* v. *Philbin, supra,* 19 Cal.App.3d 115 [sporadic nature of employment in entertainment industry caused fluctuation in husband's income]; *In re Marriage of Reese* (1977) 73 Cal.App.3d 120 [140 Cal.Rptr. 589]) or to a desire to pursue a simpler lifestyle and, with an increase in support based upon the husband's actual income as well as other factors, the reasonable needs of the children could be met (*In re Marriage of Williams* (1984) 155 Cal.App.3d 57 [202 Cal.Rptr. 10]).

## III

As already noted, the applicable statutes list numerous factors that a trial court must consider in determining spousal and child support. In challenging

the support awards in this case, Richard does not contend that the trial court erred in determining the income or earning capacity of Barbara, that the spousal support award exceeds the amount necessary to maintain the standard of living established during Barbara's marriage, or that the awards exceed the reasonable needs of Barbara or the child. Instead, Richard raises two objections to the trial court's consideration of his own ability to pay. First, he contends the trial court abused its discretion in relying upon his earning capacity rather than his actual income in determining support, because his reduction in income was attributable not to a bad faith attempt to shirk family obligations, but rather to a legitimate desire to work regular hours. Second, he contends the trial court erred in fixing his earning capacity at $60,000 annual gross income because he achieved that level of income only by working excessive overtime, asserting that his earning capacity should be computed on the basis of a reasonable work regimen. We address each of these contentions in turn.

## A

■ With reference to the first of these contentions, we conclude that the trial court did not err by considering the earning capacity of Richard in establishing spousal and child support.

As explained above, the statutory guidelines governing spousal and child support do not limit the circumstances under which the trial court may consider the earning capacity of the supporting spouse or in any way restrict the trial court's discretion in the manner in which it may consider earning capacity as well as actual income in fixing support (§ 4801, subd. (a)(3); § 4721, subd. (f)(2); appen. Cal. Rules of Court, former div. VI, Discretionary Child Support, § 6(c)(2)), with the exception that in fixing child support, reliance on earning capacity must be "consistent with the best interests of the children." (§ 4721, subd. (f)(2).)

Richard contends, however, that despite the absence of any such definite limitation in the statutory language, a number of the decisions cited above limit a trial court's authority to consider a supporting spouse's earning capacity, as opposed to actual income, to instances in which the supporting spouse deliberately suppresses income for the purpose of avoiding support obligations. (See, e.g., *Philbin* v. *Philbin*, *supra*, 19 Cal.App.3d at p. 121; *In re Marriage of Williams*, *supra*, 155 Cal.App.3d at p. 62.)

We have no need in the present case to decide whether a trial court's authority to consider the supporting spouse's earning capacity is as limited as Richard maintains, because, in any event, the trial court in this case found

that Richard's deliberate shift from theater work to lesser-compensated television studio work was in fact motivated primarily by the desire to shirk his family obligations, and that finding is supported by substantial evidence.

Richard had worked primarily in theater for several years prior to the issuance of the temporary support awards and, as a union member with 17 years' seniority, had substantial control over his selection of jobs. Although Richard testified he shifted to television studio work in order to avoid working nights and weekends so as to be able to spend more time with his child, the trial court was entitled to disbelieve that testimony. Richard did not testify that theater jobs required that he work excessive hours, but only that he had chosen to work more than one job per day and to work excessive hours. Moreover, he made the dramatic shift in job choice immediately following the temporary support awards in July 1989 and thereafter failed to comply with those awards and to pay any support whatsoever, except for the nominal sum of $100 through the date of trial in October 1989.

Accordingly, we conclude that the trial court's decision to consider the earning capacity of Richard, in setting support, did not constitute an abuse of discretion. (See *In re Marriage of Smith, supra*, 225 Cal.App.3d at p. 480.)

B

■ Second, Richard contends that even if, as we have concluded, the trial court properly considered his earning capacity, the court nonetheless erred in calculating the amount of his earning capacity.

The statutory guidelines for the determination of support do not provide a specific definition of earning capacity. ■ Statutory references, however, to the measure of a spouse's ability to obtain employment (§ 4801, subd. (e)), as well as appellate decisions defining earning capacity in various contexts (see *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 860 [269 Cal.Rptr. 917]; *In re Marriage of Regnery, supra*, 214 Cal.App.3d at p. 1372), suggest that for purposes of determining support, "earning capacity" represents the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities.

In the present case, the question presented is whether "earning capacity" should, as a general matter, properly be measured by the work regimen engaged in by the supporting spouse during the marriage even if such regimen was extraordinary, requiring excessive hours or an onerous work schedule. We conclude that earning capacity generally should not be based

upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen as it would exist at the time the determination of support is made. (See *In re Marriage of Smith, supra,* 225 Cal.App.3d at pp. 476, 493.)

In *In re Marriage of Smith, supra,* 225 Cal.App.3d 469, approximately 10 years after dissolution of the marriage, the wife sought an increase in spousal support on the basis of her husband's increase in income, among other factors. She argued that to the extent her husband's income permitted, she was entitled to spousal support in an amount that would enable her to live at the actual standard of living established before separation. At the hearing on her motion for modification of spousal support, evidence was adduced that during the marriage the family had lived beyond their reasonable means, and that the husband, a partner in an actuarial firm, had worked excessive hours (approximately 60 hours per week). The trial court, in ordering an increase in support in an amount substantially less than that sought by the wife, determined that the standard of living established during the marriage had not been reasonable and accordingly was not a controlling factor in determining support. (*Id.,* at p. 478.)

On appeal, the court affirmed, concluding that although the record demonstrated the husband could afford to maintain his former wife at the standard of living established during the marriage, an award based on this standard would not be just or equitable. The court held: "[T]he parties' actual marital standard of living has reduced significance as a point of reference for determining [wife's] reasonable needs and support, due to the fact that during the marriage [husband] worked excessive hours and the parties lived beyond their means. A more appropriate measure of [wife's] post-separation needs is what would have been a reasonable standard of living for the parties given what [husband] would have earned had he worked at a reasonably human pace." (*In re Marriage of Smith, supra,* 225 Cal.App.3d at p. 493, fn. omitted.)

Such a conclusion is compelled by equitable considerations and is consistent with the legislative policies enunciated in the statutes governing family support. Setting support at a level which contemplates a work regimen considered extraordinary under current societal standards is contrary to section 4801's guideline authorizing spousal support that is "just and reasonable" (§ 4801, subd. (a)) and section 4720's guideline authorizing child support "according to the parent's circumstances and station in life. . . ." (§ 4720, subd. (a)(3)(A).)

A reasonable work regimen, as opposed to an extraordinary regimen, however, is not readily or precisely determined and is dependent upon all

relevant circumstances, including the choice of jobs available within a particular occupation, working hours, and working conditions. Established employment norms, such as the standard 40-hour work week, are not controlling but are pertinent to this determination. In certain occupations a normal work week necessarily will require in excess of 40 hours or occasional overtime and thus perhaps an amount of time and effort which may be considered reasonable under the circumstances. A regimen requiring excessive hours or continuous, substantial overtime, however, generally should be considered extraordinary.[5]

 In the present case, the record fails to establish that the trial court applied the proper standard in determining Richard's earning capacity. The trial court did not expressly determine, and the record does not support a finding, that Richard was able to earn a gross annual income of $60,000 by working a reasonable number of hours. Richard's testimony that sometimes he was required to work sixteen hours a day in order to maintain the level of income he received at the time of separation was not contradicted by his acknowledgement that *at times* he was able to earn four hours' pay for one hour of work, or by any other evidence introduced at trial. Furthermore, although Richard's shift from theater work to lesser-compensated television work might not have been necessary in order to achieve his objective of working a normal eight-hour day, the trial court did not explicitly base its determination of earning capacity upon the amount of income petitioner could earn *without substantial, continuous overtime* in higher-compensated theater work rather than in lesser-compensated television work.

We conclude the record fails to establish the trial court properly determined Richard's earning capacity in accordance with the standard of an objectively reasonable work regimen. In light of all of the other factors revealed by the record, we are unable to determine whether the trial court would have arrived at the same awards had it applied the correct standard in determining Richard's earning capacity. We therefore conclude it is appropriate to direct the trial court to apply the principles set forth above and again exercise its discretion in determining appropriate awards of spousal and child support.

Accordingly, we reverse the judgment of the Court of Appeal affirming the judgment of the trial court, and direct the Court of Appeal to remand this matter to the trial court for further proceedings to determine spousal and child support in accordance with the views expressed in this opinion.

[5]In defining earning capacity based upon a reasonable work regimen, we keep in perspective the significance of earning capacity in the determination of support. As previously explained, under the statutory guidelines governing support obligations, earning capacity is only one of several factors relevant to the determination of support.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.