**Vicki L. CROMPTON, Plaintiff and Appellee,**

v.

**Clifford Brent CROMPTON, Defendant and Appellant.**

No. 930827–CA.

Court of Appeals of Utah.

Dec. 28, 1994.

Brian R. Florence, Ogden, for appellant.

David R. Hamilton and Douglas B. Thomas, Layton, for appellee.

Before JACKSON, WILKINS and GARFF,[1] JJ.

## OPINION

WILKINS, Judge:

Clifford Brent Crompton appeals the alimony award and property distribution of the trial court's divorce decree. We affirm.

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

The principal issue on appeal is whether it was appropriate for the trial court to determine the amount of alimony to be awarded appellee, Vicki L. Crompton, based on a fifty-five hour work week attributed to appellant. Appellant argues that it is legally impermissible for the trial court to consider his overtime hours in calculating an alimony award. We conclude that it was both appropriate and necessary for the trial court to consider the appellant's history of regular overtime hours and that the trial court did not abuse its discretion in basing an alimony award on a fifty-five hour work week.

## FACTS

Appellant and appellee had been married twenty-five years when this divorce action was filed in December of 1992. They have two daughters. At the time of trial in September of 1993, the oldest had reached the age of eighteen and was living with the appellant, while the youngest was sixteen and living with the appellee.

The appellant works for a corporation as an electrician at an hourly wage of $18.22, which translates into a monthly base pay of $3,258.74 and an annual base pay of $37,904.88. However, the uncontested evidence at trial shows that for at least eight years prior to trial the appellant had consistently worked between twenty and thirty hours per week in overtime, for which he was compensated at a rate of one and a half times his hourly wage. He also frequently received "shift-differential" pay for working on Sundays, for which he was compensated at a rate of 2 times his hourly wage. As a result of regular overtime and shift-differential pay, the appellant's actual income was significantly higher than his base salary. For the four years prior to trial, his income ranged from $63,975.47 to $71,749.47, for an average of $67,776.60. His 1993 income was projected to be $72,722.80. During the four-year period up to the time of trial, the appellee worked as a retail sales clerk. Her average income over those four years was $10,669.00 per year, with a projected income of $16,-

116.00 for 1993. Throughout the course of the marriage, the parties established a lifestyle which consumed virtually all of their joint income.[2]

The trial court awarded appellee permanent alimony in the amount of $1,100.00 per month. The court arrived at this figure by anticipating that the appellant would gross $4,935.00 per month—$59,220.00 annually—which would require fifteen hours per week in overtime, assuming no additional income from shift-differential pay.

## ANALYSIS

Appellant urges this court to declare as a matter of law that a trial court cannot consider overtime or shift-differential pay in arriving at an equitable alimony award. We have found no case in which such a rule of law is employed. The clear weight of authority on the issue stands for the principle that overtime may be considered in fixing alimony awards if it is a regular, consistent and predictable occurrence. See Christopher Vaeth, Annotation, *Consideration of Obligated Spouse's Earnings From Overtime or "Second Job" Held in Addition to Regular Full-time Employment in Fixing Alimony or Child Support Awards,* 17 A.L.R.5th 143 (1994), and cases cited therein.

. Appellant calls two cases to our attention. However, both actually support the position that a trial court *should* consider overtime in fixing alimony awards. For example, appellant relies on *In re Marriage of Smith,* 225 Cal.App.3d 469, 274 Cal.Rptr. 911 (1990), to support his position. The court there refused to require an upward adjustment of an alimony award in favor of the wife based on the level of the husband's historical overtime because the hours the husband worked during the marriage could be considered excessive and unreasonable. However, the court specifically stated:

> We do not mean to suggest that income from overtime work, or from a second job, should be disregarded in determining spousal support, either initially or upon

---

**2.** At the end of the marriage, the equity built up in the family home was liquidated, most of which was directed by the court to pay off marital debt.

The remainder was split equally between the parties, but was not enough to cover their personal debts.

modification. Such income must be considered by the trial court. However, how it is to be considered in a particular case is within the discretion of the trial court. *Id.*, 274 Cal.Rptr. at 925 n. 15.

Appellant also cites *In re Marriage of Simpson,* 4 Cal.4th 225, 14 Cal.Rptr.2d 411, 841 P.2d 931 (1992). In *Simpson*, the court reversed the trial court's alimony award because the award held the husband to an unreasonable and extraordinary work regimen. It is important to note that the court did not say that it was inappropriate for the trial court to consider overtime, only that the hours were excessive in this particular case. The court acknowledged that a reasonable work regimen is "dependent upon all relevant circumstances, ... [and] [e]stablished employment norms, such as the standard 40-hour work week, *are not controlling.*" *Id.,* 14 Cal.Rptr.2d at 417, 841 P.2d at 937 (emphasis added). Neither *Simpson* nor *Smith* supports the position that a trial court should not be allowed to consider overtime in fixing an alimony award.

This court considered the issue of overtime with respect to child support in *Hurt v. Hurt,* 793 P.2d 948 (Utah App.1990), and concluded that the trial court did not err in considering a husband's "history of rather large overtime wages in determining the amount of his child support obligation." *Id.* at 950. The husband in *Hurt* claimed that his overtime work would decrease in the future. In response to this claim, the trial court took a wait-and-see approach, whereby the child support amount would be modified if overtime, in fact, decreased in the future. *Id.*

An Iowa appellate court took a similar approach with respect to the consideration of overtime in calculating alimony. The court in *In re Marriage of Elbert,* 492 N.W.2d 733 (Iowa App.1992), stated:

[W]e hold that overtime income should be considered in establishing net monthly income for the purpose of determining an award of spousal support. [Husband's] overtime has been consistent throughout the past five years; his overtime income is not speculative. Nothing in the record indicates his overtime income will decline in the future. However, should [Husband's] income change substantially, he may seek a modification of the parties' dissolution decree.

*Id.* at 735. We believe this to be sound policy.

 In fixing an alimony award, a trial court must assess the needs of the receiving spouse as well as the ability of the other spouse to provide support. *Martinez v. Martinez,* 818 P.2d 538, 542 (Utah 1991). The needs of the spouses are determined by looking at the standard of living the parties established during marriage. *Id.* Living standards, and the needs those standards give rise to, vary from one marital arrangement to another, as do sources of income to meet those needs. Thus, it would be inappropriate for an appellate court to tie the hands of a trial court by confining its consideration of income in every case to only that which springs from a forty-hour-week source. A trial court must be able to consider all sources of income that were used by the parties during their marriage to meet their self-defined needs, from whatever source— overtime, second job, self-employment, etc., as well as unearned income.

 Similarly, because the needs of the parties to a marriage are defined by the parties' own decisions concerning their standard of living, an alimony award is highly fact specific and dependant on the parties themselves. For this reason, trial courts are given broad discretion to determine the standard of living that existed during the marriage in an effort to equalize the parties' post divorce status. *Howell v. Howell,* 806 P.2d 1209, 1212 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991). Furthermore, we will reverse a trial court's judgment with respect to an award of alimony only if it represents a clear and prejudicial abuse of discretion. *Id.* at 1211. Finally, we will reverse a trial court's factual determination as to whether overtime work will continue at a certain level only if clearly erroneous. *See id.* at 1211.

 It was appropriate in the present case for the trial court to consider appellant's eight-year history of shift-differential and overtime pay, and fix an alimony amount based on that history. The evidence present-

ed at trial indicated a consistent pattern of behavior established by the parties during their marriage. It was not clearly erroneous for the trial court to conclude that appellant's past work habits would continue into the future at a level equal to fifty-five hours a week. It was well within the trial court's discretion to use this factual finding to calculate an alimony award which would be fair and equitable to both parties. If, in fact, there is a material change of circumstance in this regard, appellant can petition for a modification of the divorce decree.

Appellant raised other issues with respect to the alimony award and property division. We reject appellant's contentions and hold that the trial court did not abuse its discretion in fixing alimony at $1,100.00 a month. We also hold that the trial court did not abuse its discretion by dividing the liquidated home equity evenly between the parties, in spite of the fact that the appellee received at least $1,200.00 more in value after the stipulated property division.

## CONCLUSION

We hold that in fixing an alimony award it is appropriate and necessary for a trial court to consider all sources of income that were used by the parties during their marriage to meet their self-defined needs, from whatever source—overtime, second job, self employment, etc., as well as unearned income. In this case the trial court appropriately considered appellant's history of overtime work. The consideration of various sources of income gives rise to factual determinations and judgments of equity. In the present case, the trial court's factual determination that appellant could be expected to continue working at no less than a fifty-five-hours-per-week pace in the future was not clearly erroneous. Also, the use of this determination to calculate an equitable alimony award was not an abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

JACKSON and GARFF, JJ., concur.