[No. C027700. Third Dist. July 27, 1998.]

In re the Marriage of HOWARD E. and PATRICIA O. COHN.
HOWARD E. COHN, Appellant, v.
PATRICIA O. COHN, Respondent.

**COUNSEL**

Howard E. Cohn, in pro. per., for Appellant.

Harrison L. Goodwin for Respondent.

**OPINION**

**CALLAHAN, J.**—Appellant Howard E. Cohn (Howard), former husband of respondent Patricia O. Cohn (Patricia), appeals from a judgment after trial which awarded Patricia temporary and permanent child and spousal support. Howard contends the court abused its discretion in imputing income to him based on earning capacity when the evidence showed he had no opportunity to work.

We shall conclude the trial court acted within its discretion in imputing income to Howard, but that the court's earning capacity figures are not supported by substantial evidence. We will therefore reverse and remand for further proceedings on the issue.

### BACKGROUND

Howard and Patricia married on September 4, 1983, and separated in August of 1994. They had three children: Matthew born in 1986, Brian born in 1988, and Regina born in 1992. During the marriage, Howard worked in various capacities. In 1987, he obtained a job as house counsel for a

management company, earning $70,000 per year. At the peak of his career in 1993, he was working as an attorney for a group of related real estate investment companies and was grossing approximately $28,600 per month. Patricia held a degree in mechanical engineering and was employed throughout the marriage, earning a steady professional income until 1992 when Regina was born.

In August of 1993, Howard's employer filed for bankruptcy. Howard's income dried up and the Cohns' financial world began to crumble. Howard received some retainer income between February and August of 1994, but by January of 1995 he was effectively unemployed. In early 1994, Howard began having severe stress-related emotional problems, culminating in mental breakdowns and temporary hospitalization in January of 1995.

While Howard was hospitalized, Patricia took the three children and moved to Seattle. The marriage was formally dissolved on January 18, 1996.

After a custody hearing in July of 1996, Patricia was awarded primary physical custody of the three children, with liberal visitation to Howard. The parties were ordered to share equally the transportation and lodging expense for the children's visits with Howard.

Trial on other issues, including child and spousal support, was held on March 12-14, 1997. Howard filed for chapter 7 bankruptcy just prior to trial.

At the trial, Howard testified in exhaustive detail about his efforts to find employment since his mental breakdown in January 1995. After completing 40 hours of Mandatory Continuing Legal Education, he looked for jobs in the Daily Recorder, submitted resumes and cover letters to most of the firms in the Sacramento area, and applied to numerous public agencies such as the Sacramento, Placer, and Shasta County Public Defender's and District Attorney's offices. He did not receive a single job offer.

Frustrated by his inability to find work, Howard moved to Los Angeles in mid-1995 for about three months where he worked for a private lender, but was unable to make any money. He then returned to Sacramento and pursued an opportunity to sell living trusts, obtaining the required insurance license, but was eventually informed by the company he worked for that it had adopted a new policy not to hire attorneys. Howard then sought out other types of employment such as in-house counsel, paralegal, law clerk, contract attorney, and car salesman, all to no avail.

In March 1996, Howard set up his own law office in Hayward, where he used to practice, and accepted court appointments from Alameda County.

However, the appointments were few and far between, and even with a few private retainer cases, he experienced a negative cash flow.[1] At the time of trial, Howard's plan was to close his Hayward office, move back to Sacramento and set up his own law practice there.

Patricia testified that she did not know of any job offers that Howard turned down, or of any employment opportunities he could have, but failed to pursue.

## THE TRIAL COURT'S RULING

The court issued a statement of decision in which it found that Howard earned virtually nothing during 1995, and that his gross income in 1996 was approximately $8,000. The court also found that Howard's mental and physical problems prevented him from earning any significant income between January and August of 1995, and it therefore declined to order him to pay child or spousal support for that period.

However, for the period between August 1995 and August 1996, the court set Howard's annual earning capacity at $40,000, "given his previous experience, education and professional background." From August 1996 to the time of trial in March 1997, the court imputed income to Howard at the stepped-up rate of $80,000 per year "based upon the additional time that passed thereby allowing [him] to obtain income or employment more consistent with his previous experience and training." The court also imputed income to Patricia based on her earning capacity. Using the "DissoMaster" computer program and the imputed income figures, the trial court calculated Howard's temporary and permanent child and spousal support.

## APPEAL

In computing child support obligations under the statewide uniform guidelines, the trial court has discretion to impute income to either parent based on that parent's "earning capacity." (Former Fam. Code,[2] § 4801, subd. (c)(1), repealed in 1997 (Stats. 1997, ch. 194, § 1) see now § 4058, subd. (b).) The Family Code also permits the court to consider a party's present or future "earning capacity" as a factor in determining spousal support. (§ 4320, subds. (a), (c); see *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 230 [14 Cal.Rptr.2d 411, 841 P.2d 931].)

" ' "Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work

---

[1]Howard testified that in 1996 his Hayward practice grossed some $7,000-plus, while incurring overhead expenses of $14,000-$15,000.

[2]All further unspecified statutory references are to the Family Code.

experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citation.]" ' " (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337-1338 [66 Cal.Rptr.2d 393].) Use of the earning capacity standard is inappropriate where a party lacks either the ability *or* the opportunity to work. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 999 [64 Cal.Rptr.2d 383]; *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1636 [16 Cal.Rptr.2d 345]; *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 860 [269 Cal.Rptr. 917].)

Taking his cue from the above line of authority, Howard contends that (1) because the trial court did not find in its statement of decision that he had the opportunity to work, it erred in imputing income to him based on earning capacity, and (2) use of earning capacity rather than actual income figures was an abuse of discretion because there is no substantial evidence in the record that Howard had the opportunity to work. We discuss each claim individually.

*Statement of Decision*

Judgments and orders of the lower courts are presumed to be correct on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].) Under Code of Civil Procedure section 632, after the court issues its tentative decision, a party may request a statement of decision explaining the basis for its ruling. "Thereafter, under section 634, the party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment." (*Arceneaux, supra,* at pp. 1133-1134, fn. omitted.)

Here, Howard requested a statement of decision but failed to bring the court's attention to the fact that it did not make findings with respect to his opportunity to work. Thus, insofar as Howard's challenge to the judgment is based on this deficiency, it is waived. We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings. (*In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 238 [269 Cal.Rptr. 388]; *In re Marriage of Jones* (1990) 222 Cal.App.3d 505, 515 [271 Cal.Rptr. 761].) Because the court could not impute income without finding the "opportunity" element was present, we turn to the sufficiency of the evidence to support its implied finding that Howard had the opportunity to work.

## *Substantial Evidence of Opportunity to Work*

■ The record shows that after reaching the pinnacle of success as counsel to a close-knit group of companies, Howard's personal and professional life was shattered when his employer filed bankruptcy and he was laid off in 1993. He suffered a complete mental breakdown and had to be hospitalized in January 1995.

In August 1995, Howard began again to seek out employment. The evidence was uncontradicted that, despite an exhaustive job search, Howard was unable to find an employer willing to hire him in an attorney position. After attempts to earn money in other fields proved fruitless, Howard opened a solo practice in Hayward which he operated for a year, with little to show for it. At the time of trial he planned to move his practice to Sacramento where, hopefully, he would have better luck.

Substantial evidence supports the first two elements necessary for imputation of income—Howard had both the ability and the willingness to work. The question on appeal is whether the trial court could have reasonably concluded Howard had the opportunity to work on the state of this record.

Case law on the subject is scant. The only formulation of the opportunity element, first enunciated in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243] and repeated scrupulously since then, is that it means simply "an employer who is willing to hire." (*Id.* at p. 1372; see, e.g., *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218 [45 Cal.Rptr.2d 555]; *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1383 [54 Cal.Rptr.2d 314]; *In re Marriage of Hinman,· supra,* 55 Cal.App.4th at p. 996; *In re Marriage of LaBass & Munsee, supra,* 56 Cal.App.4th at p. 1338.) Accordingly, a spouse who is otherwise shown to have the ability and willingness to achieve a higher income level could, at least in theory, negate the "opportunity" element (and thereby prevent the imputation of income) by establishing that no one was willing to hire him or her despite reasonable efforts to find work. (Cf. *LaBass, supra,* at p. 1340.)[3] We have found no case, however, in which a court has declined to impute income based on a lack of available employment opportunities.

---

[3]As *LaBass* illustrates (56 Cal.App.4th at p. 1339), a party cannot circumvent the "willingness" element by deliberately refusing to find employment consistent with his or her earning ability. Thus, where the other two elements, ability and opportunity, are present, earning capacity may properly be imputed even where the party lacks willingness to find more lucrative work. (*In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 995, fn. 6.)

This case approaches that frontier. The evidence showed that no employer was willing to hire Howard in the legal field despite the fact that he diligently sought such employment.[4]

We begin with the observation that in the case of professionals or trades-people who are self-employable, the "employer willing to hire" definition is obviously too narrow, as it encompasses only salaried employees. As this case illustrates, a licensed attorney with marketable skills who cannot find outside employment may still "hang up the shingle" and try to sustain a living through court appointments, referrals, contract work, etc. This is what happened here. Frustrated by his fruitless search for a salaried position, Howard set up a law practice in Hayward, a market with which he was familiar, and did manage to make some money, albeit meager and sporadic.

Thus, a more appropriate definition of "opportunity to work" is the substantial likelihood that a party could, with reasonable effort, apply his or her education, skills and training to produce income. Under this definition, we find substantial evidence of opportunity.

However, we can find no substantial evidence to support the figures arrived at by the trial court. To rely on earning capacity in lieu of actual income "[t]he dispositive question is whether the evidence will sustain the inference that the party charged with support could, with reasonable effort, obtain employment generating the postulated (higher) income." (*County of Yolo* v. *Garcia* (1993) 20 Cal.App.4th 1771, 1781 [25 Cal.Rptr.2d 681].) Here, the trial court imputed income of $40,000 to Howard for the first year in the job market as "consistent with a basic, entry level, legal or business position, for which [Howard] was and is more than qualified." The only plausible support for that figure is Howard's testimony that the *entry level* governmental jobs he *applied for* paid "in the neighborhood of 30 to $40,000 a year." But while the court correctly concluded that Howard was *qualified* for such a position (the "ability" element), the evidence does not sustain the inference that the opportunity was there to obtain it. On the contrary, the evidence showed that despite applying for all types of entry level attorney positions in a number of counties, Howard was unable to procure even one job offer. To calculate support based on the hypothetical procurement of a job which the evidence showed was not available to Howard would effectively write the "opportunity" element of earning capacity out of existence.

Instead of basing his earning capacity on a salaried position which the evidence showed Howard was unable to secure, the court's focus should

---

[4]Unlike Patricia, who the court found "has essentially not been employed outside the home" and had made "minimal effort to obtain employment," the court found that Howard "made attempts to regain employment and income in both the legal and business fields, without much success."

have been what Howard could reasonably expect to earn as a sole practitioner in Sacramento, his stated goal at the time of trial and a reasonable one given his recent history in pursuing employment.

The record supports the court's finding that Howard grossed about $8,000 while operating a solo practice in Hayward. This is only a starting point, however. By no means was the court restricted to that figure in determining annual earning capacity. To use Howard's terminology, he could be "flipping burgers at McDonald's" and do better than that. The inquiry should be directed at what an attorney with Howard's background, age, qualifications, and experience could be expected to earn in his first year as full time solo practitioner.

An even more apparent error in the court's analysis is its projection that Howard's income would double to $80,000 after only one year. This finding is impossible to fathom. If the court based Howard's first year's income on a $40,000 entry level position, as its statement of decision clearly indicates, it is inconceivable that such an entry level salary would rise by 100 percent after only one year of service. Very few private jobs and certainly no public sector positions operate in such a manner. The basis for the court's stepped-up imputation is elusive at best, but in any event lacks evidentiary support in the record.

We are sympathetic to the trial court's view that Howard's support obligations be based on his earning capacity, and reaffirm its discretion to do so. Nevertheless, figures for earning capacity cannot be drawn from thin air; they must have some tangible evidentiary foundation. Because these figures do not, we reverse and remand for further proceedings. On remand, the court will have a much better track record from which to view the issue. Presumably, Howard would have had more than a year in which to establish his law practice. If it turns out that he continued to generate extremely low income figures as a self-employed attorney in Sacramento (as he did in Hayward) the inquiry may need to refocus on such issues as to whether Howard exercised reasonable diligence in developing his law practice or alternatively what employment opportunities were available in the nonlegal field to someone with Howard's skills and experience.

A new evidentiary hearing, at which both sides may introduce evidence of Howard's earning capacity, is the best medium through which the court can make this determination.

### DISPOSITION

That portion of the judgment ordering Howard to pay temporary and permanent child and spousal support is reversed. The cause is remanded to

the trial court for further proceedings consistent with this opinion. Howard shall recover costs on appeal.

Blease, Acting P. J., and Nicholson, J., concurred.