Filed 7/28/16  Marriage of Hernandez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of EDWARD and KAREN HERNANDEZ. | |
| EDWARD HERNANDEZ,<br><br>        Respondent,<br><br>v.<br><br>KAREN HERNANDEZ,<br><br>        Appellant. | A141188<br><br><br>(Sonoma County<br>Super. Ct. No. SFL-30948) |

In this contentious family law proceeding, Edward Hernandez moved for modification of child and spousal support obligations after losing his job.  The parties conducted discovery, and the family court took testimony over six hearing dates.  By written order, the court imputed income to Karen Hernandez, declined to impute income to Edward,[1] and granted modification of both child and spousal support.  Karen appeals, alleging misapplication of the law, abuse of discretion, and judicial bias.  We affirm.

## I.    BACKGROUND

The parties married in 1976, and separated in 2005.  The court granted a marital status dissolution in 2008, and judgment on reserved issues was entered on December 8, 2009, including orders establishing child and spousal support.  At the time of the

---

[1] Consistent with appellant's briefing and the trial record, we refer to the parties by first name to avoid confusion.  No disrespect is intended.

proceedings at issue here, one minor child of the marriage (a son) was living with Karen and receiving child support from Edward.

Edward was licensed as a registered nurse and worked as a psychiatric nurse until he lost his job in January 2011. He moved for modification of his child and spousal support obligations the following February. Karen opposed, alleging that Edward was willfully unemployed. An interim temporary support order was entered by stipulation in April 2012.

The court received evidence over six days between May 25 and August 16, 2012. Both parties testified. The evidence focused on employment available to both parties, and the question of whether income, for support purposes, should be imputed to either or both. After briefing, the matter was submitted in October 2012. The following January, the court requested further evidence of the parties' incomes, and a tentative decision was issued in April 2013. Following objections by Karen, the court issued a second tentative decision in July 2013. On October 16, 2013, the court issued an order modifying spousal and child support (Modification Order).

The court found Edward made good faith efforts to find full-time employment and found no factual basis to impute additional income to him. The court imputed income to Karen in the amount of $2,000 per month. Spousal and child support was based in part on Edward's actual earnings from the time he lost his full-time job through the end of trial. Edward received a credit against his child support obligation in the amount of $780 for outside financial aid received by the son during the period March 8 through June 11, 2012. Edward also received a credit against future child support of "one half of any financial assistance the minor child may receive from third party sources."[2]

## II.  DISCUSSION

Karen timely appealed from the Modification Order. She specifically contends the family court abused its discretion or failed to apply the law by (1) refusing to take judicial

_____

[2] The issue is moot as to future support because the parties' son is now over the age of 18.

notice of certain documents, (2) imputing income to her but not Edward, (3) ignoring impeachment of Edward's testimony, (4) finding Edward made good faith efforts to find full-time employment, (5) considering third party payments in setting child support, and (6) denying her a fair and impartial trial, as demonstrated by an "ongoing bias" against her in its findings.

A.      *Standard of Review*

We review an order modifying support based upon earning capacity for an abuse of discretion.  (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079.)  "[W]e consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.'  [Citation.] . . . '[W]e do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order.' "  (*Ibid.*)

"When modifying a support order, the trial court must provide a statement of decision explaining its ruling *if requested* by either parent.  [Citations.] . . . [¶] 'Under the doctrine of  "implied findings," when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.'  [Citations].  A party who does not request a statement of decision may not argue the trial court failed to make any finding required to support its decision."  (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.)  Karen did not request a statement of decision.  We therefore imply all findings necessary to support the trial court's order.[3]  (*Ibid.*)

---

[3] As previously noted, the family court issued a tentative decision and modified it after objections from Karen.  A statement of decision, however, is " 'a formal legal document containing the factual and legal basis for the court's decision on each principal controverted issue for which a statement is requested.  Because of the significant legal effect of a statement of decision, Code of Civil Procedure section 632 and California Rules of Court, rule [3.1590], provide a highly detailed process by which counsel for the litigants can provide input into and affect the final content and language of the statement of decision, so that the appellate court has before it the factual and legal basis for the trial court's determination of the issues being reviewed on appeal.' "  (*A.G. v. C.S.* (2016)

Before addressing the merits of Karen's claims, we first observe that Karen ignores the most basic rules of appellate review, attempting to reargue the weight of her evidence and challenge the credibility of Edward's evidence. An appeal is not a "do over" of the trial, and we are not trial judges. "[S]uch 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [her] at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.' " (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

As the reviewing court, "[w]e resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "We review factual findings of the family court for substantial evidence, examining the evidence in the light most favorable to the prevailing party. [Citation.] In reviewing evidence on appeal, all conflicts must be resolved in favor of the prevailing party, and all legitimate and reasonable inferences must be indulged in order to uphold the trial court's finding. [Citation.] In that regard, it is well established that the trial court weighs the evidence and determines issues of credibility and these determinations and assessments are binding and conclusive on the appellate court." (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051–1052.)

Karen invokes what she characterizes as the "exception" on appellate review for testimonial evidence that is "inherently improbably or incredible." Her effort is wasted. Before evidence can be disregarded as inherently improbable, a physical impossibility of the evidence being true must exist, or its falsity must be apparent without any resort to

246 Cal.App.4th 1269, 1282–1283.) The parties in some respects treated the July 2013 tentative decision as a statement of decision. But the court subsequently directed Edward's counsel to *prepare* a statement of decision. Edward's counsel submitted a proposed order entitled, "Order Upon Statement of Decision Re Modification of Spousal Support, Modification of Child Support and Attorneys Fees," which set forth only the ultimate rulings on support. Karen made no further objection, and the court adopted the proposed order and entered it as the Modification Order. To the extent that specific findings were made by the court in the July 2013 tentative decision, we will look to those findings. To the extent specific findings were not made or requested, we apply the doctrine of implied findings. (*Id.* at p. 1282.)

4

inferences or deductions.  (*Collier v. Los Angeles Ry. Co.* (1943) 60 Cal.App.2d 169, 174.)  The evidence which Karen details in her brief merely discloses conflicts in the testimony.  "But conflicts, whether substantial or otherwise, are wholly insufficient to warrant a reviewing court in substituting its opinion for that of the trial court."  (*Hurley v. Smith* (1955) 137 Cal.App.2d 630, 632.)  " ' "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' "  (*People v. Maciel* (2013) 57 Cal.4th 482, 519.)  "This rule also applies to conflicts and inconsistencies in the testimony of an individual witness."  (*Howard v. Howard* (1954) 128 Cal.App.2d 180, 184.)

Moreover, Karen misapprehends application of the rule and cites no appellate case reversing a trial court's witness credibility determination.  "The inherent improbability rule, like the clear and convincing evidence rule [citation], is a statement of the power of the trial judge; it is not a doctrine of appellate review.  The appellate court will not substitute its evaluation of the credibility of witnesses even though to some triers of fact the evidence 'would have seemed so improbable, impossible and unbelievable' as to compel a contrary judgment."  (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 103, p. 161.)

Karen concedes that, absent reconsideration of the trial evidence's weight, she "would be finished in as much as [Edward] has testified and the Court has relied upon that testimony."  She is correct.  We find nothing in the evidence that is " ' "unbelievable *per se*," ' physically impossible, or ' "wholly unacceptable to reasonable minds." ' "  (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)  We decline Karen's invitation to usurp the role of trial judge in this matter.

B.    *Request for Judicial Notice*

On the first day of trial, Edward requested judicial notice of a November 2008 statement of decision filed by an earlier assigned judge, Judge Cerena Wong.  Karen then sought judicial notice of an earlier tentative statement of decision by Judge Wong, and of

Karen's objections to that tentative statement. Karen argued the earlier tentative statement in combination the November 2008 statement of decision evidenced pejorative statements concerning Karen's credibility and a "draconian" child custody order, which Karen was entitled to use as evidence of Judge Wong's bias against her. The court denied Karen's request, finding the requested evidence to "have no value to this Court, or to any relevant issue involved in this litigation."[4]

Karen contends the court abused its discretion in denying judicial notice of the tentative statement of decision and her objections to it, asserting judicial notice was mandatory because the documents were part of the court's file. Evidence Code section 452, subdivision (d), *permits* judicial notice of "Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States." Karen argues that judicial notice of such records is mandatory under Evidence Code section 453,[5] once proper request is made and notice given. She is incorrect.

" 'Although a court may judicially notice a variety of matters [citation], only *relevant* material may be noticed.' " (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.) The court here—near the conclusion of trial and having heard extensive evidence—found the requested documents were not relevant to any disputed issue before it. Karen asserts the offered documents would lead to a conclusion that Judge Wong exhibited bias against her. "When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable." (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.) A

---

[4] It is not clear, either from the record or briefing, for what purpose Edward's counsel offered the November 2008 statement of decision. The limited record colloquy indicates that Edward's counsel sought to question the parties as to their compliance with Judge Wong's *custody* order—an issue not relevant here. The court apparently allowed introduction of the 2008 statement of decision as an exhibit over Karen's objection.

[5] "The trial court *shall* take judicial notice of any matter specified in Section 452 if a party requests it and: (a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and (b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter." (Evid. Code, § 453, italics added.)

court does not take judicial notice of the truth of factual matters which might be deduced from noticed material " ' "since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow therefrom." ' " (*Aquila, Inc.,* at p. 569.) Even if the existence of the tentative decision and Karen's objections to it were somehow relevant (and Karen does not explain why), the inferences and conclusions Karen sought to draw from the documents would not be judicially noticeable. (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 836 [*existence* of a document may be judicially noticeable, but not the *truth* of statements contained therein or the *proper interpretation* of the document].)

C.      *Imputed Income*

"In computing child support obligations under the statewide uniform guidelines, the trial court has discretion to impute income to either parent based on that parent's 'earning capacity.' [Citations.] The Family Code also permits the court to consider a party's present or future 'earning capacity' as a factor in determining spousal support." (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 927; Fam. Code, § 4320, subds. (a), (c).) "[F]or purposes of determining support, 'earning capacity' represents the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities." (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234.) " ' " 'Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire.' " ' " (*Cohn*, at pp. 927–928; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372.) "[E]arning capacity may only be considered when a parent unreasonably fails to avail himself or herself of employment possibilities." (*In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1217.) "[I]n fixing support, courts have looked solely to the actual income, rather than the earning capacity, of the

7

supporting spouse in cases where the record demonstrated that a reduction in the supporting spouse's income was attributable to circumstances beyond the spouse's control." (*Simpson*, at p. 232.)

1. *Edward's Income*

In addition to her attack on Edward's credibility, Karen insists that the trial court misapplied the law in declining to impute income to Edward, but she fails to articulate how it did so. Absent reasoned argument, and citation to authority, the claim is waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.) Her claim also fails on the merits.[6]

Edward was 56 years old at the time of trial, held two bachelor's degrees and master's degrees in business administration and public health. He was licensed as a registered nurse, and worked as a psychiatric nurse. Following loss of his full-time position at John George Psychiatric Pavilion in January 2011, Edward worked for Accent Care as a home health nurse from March 8, 2011 to March 2, 2012. He was paid on a per visit basis and earned an average of $1,208 per month. While unemployed, each month Edward received approximately $1,800 in unemployment compensation and an average

---

[6] Karen also contends the court erred in permitting Edward to deduct health insurance premiums in computing the amount of his income that was available for support. She acknowledges the Family Code provides for deductions from gross income of certain items, including actual amounts attributable to health insurance or health plan premiums for the parent. (Fam. Code §4059, subd. (d).) Karen bases her objection to Edward's deduction on statements in his trial court briefing that medical insurance was provided through his current wife's employer. Suggesting this is an issue of first impression, she argues that the "proper interpretation of [Family Code] section 4059" would require the claiming party to pay such premiums out of his or her own separate income, and not household income. Karen provides no discussion or elaboration of why her preferred interpretation is the "proper" one. Edward argues that she waived this issue by failing to properly raise it in the trial court or to adequately object to the court's tentative decision. We need not address Edward's arguments because Karen admits she can find no authority in support of her position, and she provides no reasoned argument on why we should read this requirement into the statute. Again, absent reasoned argument and citation to authority, the claim is waived. (*Badie v. Bank of America, supra,* 67 Cal.App.4th at pp. 784–785.)

of $1,929 in pension/retirement payments.  He found a part-time job on June 11, 2012, at St. Helena Hospital in Vallejo (80 hours/$3,863.20 per month).  At the time of trial, his monthly income was $5,310, including his pension benefits.

Edward testified that during his employment with Accent Care he sought a full-time position within the company, and he continued to search for other job opportunities on websites and at local hospitals.  He never rejected an interview and never refused to apply for a position he became aware of during this period.  He applied for positions posted online or through nurse registries and planned to continue to look for a full-time position.  Edward did not dispute his ability to work and asserted his willingness to do so.  As noted *ante*, the court found, based on this trial testimony, that Edward was making good faith efforts to find further employment and declined to impute income to him.  Karen cites no authority for the proposition that the court was *required* to impute income to Edward under these circumstances, and she fails to show the court abused its discretion in refusing to do so.

2.      *Karen's Income*

Karen objects to the court's imputation of any income to her and argues the finding she had the ability to earn additional income is speculative and unsupported by the evidence.  Karen contends she had neither the opportunity nor the ability to earn at the level imputed to her, and imputation of income to her was "punitive."  We find the evidence sufficient to support imputation of income to Karen, and the court did not abuse its discretion in doing so.

"To rely on earning capacity in lieu of actual income '[t]he dispositive question is whether the evidence will sustain the inference that the party charged with support could, with reasonable effort, obtain employment generating the postulated (higher) income.' " (*Cohn, supra,* 65 Cal.App.4th at p. 930.)  "The parent seeking to impute income must show the other parent has the ability or qualifications to perform a job paying the income to be imputed and the opportunity to obtain that job, i.e., there is an available position. The parent seeking to impute income, however, does not bear the burden to show the

other parent would have obtained employment if it had been sought." (*In re Marriage of McHugh, supra,* 231 Cal.App.4th at pp. 1246–1247.)

We again start with the presumption that the court's orders are correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) We apply "the familiar tenets of the substantial evidence rule, ' "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible." ' " (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 31.) "[T]he burden is on the appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] A recitation of only [the appellant's] own evidence or a general unsupported denial that any evidence sustains the findings is not the 'demonstration' contemplated under the rule. An appellant 'is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done, the error assigned is deemed [forfeited].' " (*Green v. Green* (1963) 215 Cal.App.2d 31, 35.)

At the time of trial, Karen was 54 years old and in good health. She held a Ph.D. in marriage and family therapy and a California license to practice marriage and family therapy. She also held pilot and flight instructor licenses. She owned an airplane and operated a flight school business in Petaluma. Karen started her flight school business in 2006, initially grossing over $87,000 ($18,000 net). After she relocated to El Dorado County, she found that she was unable to successfully develop her flight business commuting to Bay Area. She was, however, continuing to offer flight lessons and anticipated being able to generate net income of approximately $5,000 per year.

In 2011 she began working with Mental Health Net, a Department of Defense contractor, providing counseling services to military families. Her assignments involved travel to military bases across the country. She was paid at a rate of $40 per hour, exclusive of expense per diem allowances. She testified "numerous assignments over the summer months" were available for which she could make requests to work, but that it was "awkward . . . not knowing when this court commitment is going to be finished."

10

She had not applied for other available assignments outside the United States because her son was then 16 years old and in college.

Karen submitted evidence of a significant number of other job applications and responses. The court found that "the vast majority of the applications were to positions for which Karen did not have the requisite experience" and that her "shotgun unfocused approach suggests a job search more designed for appearances than success." The court questioned whether Karen was "truly attempting to seek employment in her chosen field of mental health therapy," and found her job search evidence "somewhat disingenuous."

The court relied exclusively on Karen's recent contract work as an marriage and family therapist in determining her earning capacity and imputing income, finding that she earned annualized income of $30,000 from this employment, and setting the imputed income at $2,000 per month (rather than $2,500 per month) based on what she had earned when actively pursuing such assignments. Karen acknowledged that work assignments were regularly posted for which she could have applied, but for the then-active litigation. The court found that Karen's job search evidence "support[ed] a contention that there were a number of jobs available in her geographic area for someone with licensing and/or experience in mental health counseling."

Karen also *agreed* at trial that it was appropriate to impute income to her—she simply disagreed as to the amount. She suggested that the court continue to impute income to her at the net amount of a full-time minimum wage job, or $1,500 per month. The court ultimately set Karen's income for support purposes at $3,310 per month, including Karen's share of Edward's retirement benefits and her anticipated income from flight instruction. Karen fails to demonstrate that the court abused its discretion in doing so. The court then specifically enumerated and applied the Family Code section 4320 factors in setting spousal support. The court set support at $50 per month for the period from February 9 to March 8, 2011 (when Edward was unemployed),[7] at $150 per month from March 8, 2011, to March 7, 2012 (when Edward was employed at Accent Care),

---

[7] No income was imputed to Karen for this period.

11

and at $250 per month thereafter. Karen does not separately assert that these determinations were erroneous.

3. *Absence of Best Interest Findings*

Karen argues the court failed to consider their son's best interest when declining to impute income to Edward and imputing income to her. She points to the lack of discussion in what she refers to as the court's "statement of decision"—the July 2013 tentative decision. Karen is correct that the court's determination of earning capacity must be "consistent with the best interest of the child[]." (Fam. Code, § 4058, subd. (b); *In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 775.) The court made no specific findings on this issue. Even assuming this was error, and further assuming that the tentative decision can be fairly characterized as a statement of decision[8] (see *A.G. v. C.S., supra,* 246 Cal.App.4th at pp. 1282–1283), Karen failed to preserve the issue for appeal by asking the court for findings in her objections to the tentative decision. " '[A] party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . . [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment.' " (*In re Marriage of Cohn, supra,* 65 Cal.App.4th at p. 928.)

D. *Child Support and Third Party Payments to Son*

Child support awards are also reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282.) A trial court, however, "has 'a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . .' [Citation.] Furthermore, 'in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' " (*Id.* at pp. 282–283.)

---

[8] We note that Edward also characterized it in this fashion in the caption of the Modification Order.

At the time of trial, the parties' then 16-year-old son had obtained a general education credential, allowing him to graduate from high school, and he had enrolled in Santa Rosa Junior College.[9] He first lived with a family in Santa Rosa, then leased an apartment with another student. Karen argued that the son's college expenses were $1,216 per month on an annual basis, and she asked the court to order Edward to pay half of this amount as a child support add-on. The court denied the request, finding that Karen had unilaterally made the decision to enroll the son in college contrary to an order of the court, and without Edward's agreement, creating additional expense. The court equated Karen's actions to a unilateral decision by one parent to send a child to a private school.[10]

The son qualified for need-based federal student aid (a $5,500 Pell Grant) and waiver of certain college fees ($1,055), for a total amount of $6,555 per year. The court found these additional funds (annualized at $520 per month) assisted both Karen and Edward in meeting the college expenses of their son, and found it "appropriate to attribute one-half of this sum as a deduction" from Edward's support obligation.

Karen argues that the court lacked discretion to consider this income in determining support. She again suggests this is an issue of first impression and then proceeds to cite what she alleges is the "well established rule" that the assets or income of a child may not be used to offset support payments. She cites *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1158, and attributes the following quote to that case: " 'The child's own estate, as such, is not a factor in computing a parent's formula support obligation; **nor can income from the child's separate estate be held to directly discharge or offset a parent's support obligation.'** [Citation.] (Emphasis added)" That is not what the cited authority actually says. *Drake* dealt with consideration of trust income as support for a disabled adult, and instead says: "We are aware that under the guideline formula the child's own estate, *as such*, is not a factor in computing the amount

_____

[9] Karen home schooled their son, but the family court ordered her to enroll him in a "non-charter public school" after Edward objected.

[10] An analogy Karen agreed was appropriate.

of child support owed by a parent. [Citation.] This feature of the formula reflects 'the legislative intent that children [should] share in the standard of living of both of their parents' [citations], and the principle that '[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life' [citation]. *Nonetheless, in suitable circumstances, the trial court may adjust parental support obligations in light of a child's independent income.* [Citation.] Accordingly, when a disabled adult child has independent income or assets, the trial court has the *discretion* to reduce the formula-calculated amount of child support." (*Drake,* at p. 1158, first italics in original; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) ¶¶ 6:411 to 6:415, pp. 6-171 to 6-173.) We are dismayed by Karen's blatant misrepresentation of case authority. We find equally disturbing Karen's failure to acknowledge and correct this egregious misstatement when brought to her attention in the respondent's brief. We advise appellate counsel that we consider such conduct to constitute not only a clear violation of the California Rules of Court, but a serious ethical breach. This misconduct would more than justify complete disregard of Karen's argument on this issue. Karen, in any event, again fails to demonstrate that the court abused its discretion in setting support under the somewhat unusual circumstances presented here.

E.     *Judicial Bias*

Karen concludes that her lack of success in this litigation must be the consequence of judicial bias.[11] She contends the court's bias is evidenced by adverse evidentiary rulings, the court's rejection of her testimony, and the court's "willingness to disregard the overwhelming evidence of the falsity of [Edward's] testimony" and "the Court's preference for clearly false testimony." She asserts the court exhibited a "general disdain for Karen and her evidence." Conceding the absence of any authority directly supporting her position, Karen asks us to "examine the totality of the evidence," which she contends

---

[11] As noted previously, her attacks are not limited to the current family court judge.

14

demonstrates "a pervasive and ongoing pattern of bias such that she was denied a fair and impartial trial."

This ad hominem attack on the court is ultimately nothing more than a challenge to the court's credibility determinations. While we must address the issue of judicial bias, it merits little discussion here.[12] First, it well settled that adverse or erroneous rulings, especially those subject to review, do not establish a charge of judicial bias. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112, disapproved on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) When the trial court sits as a trier of fact, it is called upon to determine if a witness is to be believed or not—that is the nature of factfinding. (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) "When making a ruling, a judge interprets the evidence, weighs credibility, and makes findings. In doing so, the judge necessarily makes and expresses determinations in favor of and against parties. How could it be otherwise? We will not hold that every statement a judge makes to explain his or her reasons for ruling against a party constitutes evidence of judicial bias. [¶] '[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. It is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed, being the result of a judicial hearing, does not amount to [improper] bias and prejudice . . . .' " (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219–1220.)

---

[12] Claims of judicial bias are perhaps to be expected in bitterly contested and emotionally charged dissolution proceedings—at least from self-represented parties. In such volatile circumstances, it is not surprising that a party's "perspective becomes distorted." (*Green v. Uccelli* (1989) 207 Cal.App.3d 1112, 1122.) Karen, however, is represented by appellate counsel. Such claims made by a member of the bar, if meritless, reflect poorly on the attorney presenting them.

We presume the honesty and integrity of those serving as judges.  (*People v. Chatman* (2006) 38 Cal.4th 344, 364.)  Karen fails to demonstrate any reason for us to do otherwise.

### III.   DISPOSITION

The judgment is affirmed.  Karen shall bear Edward's costs on appeal.

_____

BRUINIERS, J.


WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.

A141188